

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-1997

# Shareholders v. Sound Radio Inc

Precedential or Non-Precedential:

Docket 95-5174,95-5174

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Shareholders v. Sound Radio Inc" (1997). *1997 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-5174

SHAREHOLDERS;
SHERIDAN BROADCASTING CORP.,

v.

SOUND RADIO, INC.
ta WNJR, RADIO 1430;
DANIEL E. ROBINSON;
JEROME J. LA PENNA, ESQ.

SOUND RADIO, INC.
ta WNJR RADIO, 1430

Debtor

(D.C. No. 94-cv-00754)

SHERIDAN BROADCASTING CORP.

v.

SOUND RADIO, INC.;
JEROME J. LA PENNA

SOUND RADIO, INC.,

Debtor

(D.C. No. 94-cv-04638)

*Jerome J. LaPenna &
 Associates, P.C.,

Appellant

*(Pursuant to F.R.A.P. 12(a))

Appellant.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 94-cv-00754)

Argued June 4, 1996

Before: SCIRICA and ROTH, Circuit Judges
and O'Neill[1], District Judge

(Opinion Filed March 21,1997 )

Harry Heher, Jr., Esq. (Argued)
Heher, Clarke & St. Landau
5 Independence Way
Princeton, NJ 08540

       Attorney for Appellee Shareholders

Sherry A. Vetterlein, Esq. (Argued)
Buchanan Ingersoll Professional Corporation
1835 Market Street
Eleven Penn Center, 14th Floor
Philadelphia, PA 19103

       Attorney for Sheridan Broadcasting Corporation

---

[1] Honorable Thomas N. O'Neill, Jr., United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

John C. Kennedy, Esq. (Argued)
O'Donnell, Kennedy, Vespole, Piechta & Trifiolis
414 Eagle Rock Avenue
West Orange, NJ 07052

    Attorney for Jerome J. LaPenna & Associates, P.C.

_____

OPINION OF THE COURT

_____

ROTH, Circuit Judge:

    Jerome J. LaPenna asks us to review a decision of the district court, reducing substantial fee awards granted him by the bankruptcy court in a protracted Chapter 11 proceeding. LaPenna was the beneficiary of more than $600,000 in fees, awarded for his services in the three capacities in which he acted during the Chapter 11 reorganization of Sound Radio, Inc. The district court found that the total amount of the fees was unreasonable. In this appeal, we have had to determine, first of all, whether there was any timely appeal of the bankruptcy court's fee awards. We concluded that one of the appellees did file a timely appeal. This conclusion then permitted us to inquire whether the bankruptcy court should have considered as a whole the fees awarded to one person, acting in three capacities, rather than considering each award separately, and also to inquire whether the district court properly reduced LaPenna's fees without remanding the case to the bankruptcy court for that

3

court to perform such a review. Because of the unusual nature of the role played by LaPenna, in his performance of three different functions in the reorganization, we conclude that his fees should be viewed as a whole with a comprehensive evaluation of the extent and nature of the various tasks he undertook in his three capacities. We will remand this case to the district court with instructions to remand it to the bankruptcy court to make an overall determination of the reasonableness of the fees.

## I.  FACTS

On November 30, 1984, Sound Radio, Inc., an AM radio station broadcasting under the call letters WNJR, filed its Chapter 11 bankruptcy petition. Twelve years later, the bankruptcy court closed the case. In re Sound Radio, Inc., No. 84-6261 (Bankr. D.N.J. Apr. 29, 1996). The proceedings have already produced four published opinions and countless unpublished rulings. See In re Sound Radio, 103 B.R. 521 (D.N.J. 1989) (affirming plan confirmation); In re Sound Radio, 145 B.R. 193 (Bankr. D.N.J. 1992) (considering applications for fees and expenses by parties other than LaPenna); In re Sound Radio, 93 B.R. 849 (Bankr. D.N.J. 1988) (confirming plan of reorganization); In re Sound Radio, 59 B.R. 87 (Bankr. D.N.J. 1986) (refusing to lift stay). Mindful of this extensive record, we will limit our discussion to events linked directly to the LaPenna fee dispute.

The Sound Radio bankruptcy was filed in 1984. After

4

bitter infighting among the shareholders, the reorganization plan was confirmed on January 5, 1989. During the same period, the shareholder disputes were the subject of litigation in the New Jersey courts. The shareholders continued to cause difficulties in the operation of Sound Radio after the plan confirmation. As a consequence, the Official Unsecured Creditors Committee moved for the appointment of a trustee. In October 1989, the bankruptcy court agreed to name a trustee to manage the day-to-day operations of Sound Radio. Sound Radio appealed this decision to the district court, which modified the bankruptcy court's order and provided for the appointment of a "Managing Agent in lieu of a Trustee." In re Sound Radio, Inc., No. 84-6261 (D.N.J. Dec. 22, 1989). The position of Managing Agent was created to avoid the impact of 11 U.S.C. § 1104(a), which arguably prevents the bankruptcy court from appointing an operating trustee after a plan of reorganization has been confirmed.[2]

On February 5, 1990, the bankruptcy court appointed LaPenna as Managing Agent for Sound Radio. The appointment was made pursuant to 11 U.S.C. § 327, which provides for the employment of professional persons to represent or assist the trustee in carrying out the trustee's duties. Two days later,

_____

[2] Section 1104(a) provides in its opening sentence: "At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee-- . . .."

the court approved LaPenna's decision to act as his own counsel, naming him Attorney for the Managing Agent. On September 19, 1990, the bankruptcy court clarified the powers and authority of the Managing Agent, stating that the Managing Agent "has, and since his appointment has had, all of the powers and authority of a Trustee under Chapter 11 of the Bankruptcy Code." On October 2, 1992, the court presented LaPenna with a third hat, making him Sound Radio's Disbursing Agent.

The record is clear that the bankruptcy court was of the opinion that LaPenna performed all of his duties with considerable ability. However, LaPenna also sought substantial compensation for his services.

During his tenure, LaPenna filed eleven fee applications with the bankruptcy court. Four sought interim fees as Attorney for the Managing Agent. Three sought supplemental fees and one sought final fees in the same capacity. LaPenna also filed for interim fees and final fees as Managing Agent, as well as for final fees as Disbursing Agent.

The dates, substance, and dispositions of the eleven fee petitions create a baffling trail of documents and docket entries. LaPenna's first series of applications for fees were filed in his capacity as Attorney for the Managing Agent. An application, requesting $17,050.00 in interim fees, was docketed on July 13, 1990. It was awarded in full on September 27, 1990. The next application, requesting $23,537.50 in fees and $72.25

in expenses, was docketed on December 6, 1990.  It was granted in full on March 21, 1991.  A third application, requesting $27,937.50 in interim fees and $329.08 in expenses, was docketed on August 7, 1991.  It was granted in full on October 17, 1991.

LaPenna next submitted a series of fee applications as both Managing Agent and Attorney for the Managing Agent.  On November 20, 1991, LaPenna filed an application for interim compensation as Managing Agent, seeking $65,000.00 in fees.  The court granted that application in full on December 16, 1991.  On January 24, 1992, LaPenna's filed his fourth application for interim compensation as Attorney for the Managing Agent, seeking $32,242.50 in fees and $845.02 in expenses.  That request was granted on March 31, 1992.  On May 28, 1992, LaPenna applied for final compensation in his capacity as Managing Agent, and on June 1, 1992, he applied for final compensation as Attorney for the Managing Agent.  The May 28 application sought $205,000.00 in compensation in addition to the amounts already granted.  The June 1 application sought $75,357.50 in fees and $894.53 in expenses, again in addition to what he had already received.

Certain of the Sound Radio shareholders objected to the May 28 application as "premature."  On July 1, the bankruptcy court granted the May 28 application but held back $30,000 of the allowed compensation until the Managing Agent filed his final report.[3]  On July 29, 1992, the court granted the June 1

---

Because non-final allowances of compensation are always subject to the court's

7

application in full.  Both orders were entitled "Order For Final Compensation To Managing Agent."  No mention was made in either order of final compensation to LaPenna in his capacity as Attorney for the Managing Agent.

This omission was prescient.  Over the next two years, LaPenna filed three additional applications for fees as Attorney for the Managing Agent.  On December 11, 1992, LaPenna sought $92,535.00 in "supplemental fees" and $2,481.55 in expenses.  After shareholder objection, this application was granted in the reduced sum of $82,500 on March 31, 1993.  On April 14, 1993, LaPenna sought $55,830.00 in supplemental fees and $1,510.40 in expenses.  It was granted on June 9, 1993.  On October 19, 1993, in a "third interim supplemental" application, LaPenna sought $18,250.00 in fees and $1,264.88 in expenses.  On December 6, 1993, before the bankruptcy court ruled on the previous fee application, LaPenna filed an application for final fees as Disbursing Agent, seeking $10,485.12 and $32.80 in expenses.  On December 14, 1993, the bankruptcy court granted the October 19 request.  The December 14 order bears the word "final," written

_____

reexamination and adjustment at the conclusion of the case, the deferral of the completion of payments to the Managing Agent until the filing of his final report would seem to preclude the July 1, 1992, order from being regarded as a final, and thus appealable, order.  See Matter of Taxman Clothing Co., 49 F.3d 310, 314 (7th Cir. 1995) ("all awards of interim compensation are tentative, hence reviewable--and revisable--at the end of the case"); 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY (15th Ed. Rev. 1996) ¶ 331.04[1] (interim allowances are subject to reexamination because all administrative expenses "must receive the court's final scrutiny and approval."); ¶ 331.041[2] ("a party seeking to challenge an interim award is not entitled to an immediate appeal.")

in what appears to be the bankruptcy judge's handwriting, above the title, "Order Granting Allowances."[4]  On January 19, 1994, the bankruptcy court granted the December 6 request for the final fees as Disbursing Agent.

Prior to the current appeal, Sound Radio's shareholders had made only two challenges to the applications for fees.  The first, by a group of shareholders "Shareholders") represented by Harry Heher, Jr., Esq., was to the application of May 28, 1992, as being premature.  The second, by Sheridan Broadcasting Corporation ("Sheridan"), was based on LaPenna's failure to have lesser paid associates undertake some of his duties as attorney for the Managing Agent.  This challenge resulted in the March 31, 1993, reduction of the allowance of fees from $92,535 to $82,500.

The appellees are these two groups of Sound Radio's shareholders, Sheridan and Shareholders.  Although the district court consolidated their challenges in a single appeal, Sheridan and Shareholders have reached this court by very different paths.

Shareholders' appeal began with the bankruptcy court's order of December 14, 1993, awarding LaPenna final fees as Attorney for the Managing Agent.  Harry Heher filed a Notice of Appeal from that order on December 27, 1993.  The district court dismissed the appeal as untimely.  In his brief before this

---

As we note above, the October 19, 1992, petition which requested this allowance was an application for "interim supplemental" fees and expenses.

court, Heher explained the late filing by the fact that LaPenna never distributed copies of the order to counsel. Joel R. Glucksman, counsel to Sound Radio's former minority shareholder and Board Chairman Daniel E. Robinson, eventually distributed the order on December 30, 1993. It arrived at Heher's office on January 5, 1994, nearly two weeks after the time for appeal had expired. Heher, however, had not relied on LaPenna to distribute the order. When no order arrived within a week of its entry, Heher visited the Clerk's Office on December 22, 1993, and obtained a copy. He circulated it among his clients, who requested an appeal. Heher promptly prepared a Notice of Appeal, intending to file it on the afternoon of Friday, December 24, 1993. Because of the Christmas holiday, Heher telephoned the Clerk's Office to see if it was open. He received no answer. Heher filed the Notice of Appeal at the start of business on Monday morning, December 27. It bears a time stamp of 9:31 a.m.

On January 27, 1994, Heher filed an Amended Notice of Appeal on behalf of Shareholders, changing the subject of the appeal from the bankruptcy court's December 14 Order to its January 19 Order, granting LaPenna fees as Disbursing Agent. The district court treated this filing as a timely Notice of Appeal from the January 19 Order.

Sheridan followed a different course. It did not file any appeals from "final" fee orders. However, on May 23, 1994, Sheridan filed a pleading styled
Motion of Sheridan Broadcasting for an Order (I) Determining the

> Final Allowed Compensation to Managing Agent, Attorney for Managing Agent and to Disbursing Agent, (II) Directing Mr. LaPenna to Reimburse Debtor's Estate for Unreasonable and Excessive Interim Compensation Paid to Managing Agent, Attorney for Managing Agent, and Disbursing Agent, (III) Providing for Final Accounting and Distribution of Debtor's Estate and (IV) Discharging Managing Agent, Attorney for Managing Agent, and Disbursing Agent.

The bankruptcy court denied the motion on August 31, 1994. Sheridan filed a timely Notice of Appeal.

The district court assumed jurisdiction over both appeals. In an opinion filed December 9, 1994, the district court explained its assertion of jurisdiction, consolidated the cases, and directed the parties to file supplemental briefs on the reasonableness of LaPenna's fees. By Opinion and Order of February 10, 1994, the district court reduced those fees by $101,195.00. LaPenna appealed.

## I. JURISDICTION AND SCOPE OF REVIEW

The bankruptcy court exercised jurisdiction over this case pursuant to 28 U.S.C. § 157. The district court asserted appellate jurisdiction pursuant to 28 U.S.C. § 158(a). We have jurisdiction over the appeal from the district court pursuant to 28 U.S.C. § 158(d). We exercise plenary review over the district court's determinations and over the bankruptcy court's conclusions of law. We review the bankruptcy court's findings of fact for clear error. Fellheimer, Eichen & Braverman v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995).

## II. DISCUSSION

Put simply, this case is a comedy of errors. The parties have repeatedly missed deadlines, misidentified important facts, and filed cryptic and unhelpful pleadings. The bankruptcy court struggled to maintain control over this twelve-year fiasco, but its orders have not focussed on the overall performance of Lapenna in his three capacities.

Although we would like to resolve this case cleanly and put an end to twelve years of litigation, we cannot so easily cut the Gordian knot. First, we have had to determine whether there was a timely appeal to the district court. Having done so, we next considered the manner in which the district court dealt with the fee awards. Like the district court, we are concerned about the total amount of fees awarded to LaPenna. In coming to this conclusion, the district court correctly focussed on the requirement that LaPenna's professional services, in all capacities, as a person appointed under § 327, be reasonable under § 330: That they be "reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services . . .."

Nevertheless, we believe the district court overstepped its bounds by reducing the fee award without a remand to the bankruptcy court. Section 330(a) appears to permit a fee

applicant an opportunity to supplement a questioned application and, in the face of an impending reduction by the court, to have the opportunity for a hearing.[5]  See In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 845 (3d Cir. 1994).  The district court reduced LaPenna's awards without permitting him the opportunity for a hearing to oppose the reduction or to establish the reasonableness of his compensation.  We will therefore reverse the judgment of the district court and remand this case to the district court to remand it to the bankruptcy court for a detailed examination of LaPenna's fees and an assessment of their overall reasonableness.

## A.  The Timeliness of the Appeals

We begin our examination of the merits of this appeal with the question whether there was a timely appeal filed by either appellant.  We conclude that Shareholders' first appeal was untimely but that their second appeal supported appellate jurisdiction in the district court.  We reject, however, Sheridan's efforts to conjure up a novel mechanism for fee review.

### 1.

Shareholders filed their first Notice of Appeal on December 27, 1993.  This appeal was untimely, an issue of law that we have reviewed de novo.  See In re Saunders, 31 F.3d 767,

---

Section 330(a) provides in part:  "[a]fter notice . . . and a hearing . . ., the court may award . . . reasonable compensation for actual, necessary services . . . ."

767 (9th Cir. 1994) (<u>per curiam</u>).

Shareholders' December 27 Notice appealed the order filed on December 14, 1993. Bankruptcy Rule 8002(a) states, "The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Bankr. Rule 8002(a). This deadline is strictly construed. <u>In re Universal Minerals, Inc.</u>, 755 F.2d 309, 311 (3d Cir. 1985). The failure to file a timely notice of appeal creates a jurisdictional defect barring appellate review. <u>Id.</u> at 312.

The shareholders concede the December 24 deadline,[6] instead arguing that their failure to file was the product of excusable neglect. The term "excusable neglect" appears in Bankruptcy Rule 8002(c), which governs extensions of time for the notice of appeal deadline. Rule 8002(c) provides:

> The bankruptcy judge may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect . . ..

Bankr. Rule 8002(c).

---

Had the argument been made, we might have been receptive to a suggestion that an early closing of the Clerk's Office on Christmas Eve would constitute "other conditions [making] the clerk's office inaccessible." This would extend the filing deadline until December 27. The shareholders, however, have not made this argument, nor do we think they have established the factual predicate to support it. Beyond counsel's claim of a single unanswered phone call, there is no evidence that the office was in fact closed.

We believe the facts in this case could support a finding of excusable neglect for the following reasons:  The finality (and hence appealability) of the December 14 order is a handwritten addition, no copy of the order was sent to counsel, counsel himself contacted the Clerk's Office and obtained a copy, and, once the order was obtained by counsel, the Notice of Appeal was filed without undue delay.  See Pioneer Investment Servs. Co. v. Brunswick Assocs., ___ U.S. ___, 113 S.Ct. 1489, 1496, 1499-1500 (1993) (characterizing excusable neglect as an elastic concept that encompasses inadvertence, mistake, or carelessness, as well as circumstances beyond a party's control).  Rule 8002(c), however, requires that even in cases of excusable neglect, the issue must be raised and the appeal filed within the 30-day window of Rule 8002 (Rule 8002(a)'s 10 days for the appeal + 8002(c)'s 20 days for the extension).  See, e.g., Dyotherm Corp. v. Turbo Machine Co., 434 F.2d 65 (3d Cir. 1970; In re Botany Indus. Inc., 19 B.R. 599 (Bkrtcy. Pa. 1982).  The rule does not allow a party to claim excusable neglect after the 30 days have expired.

Here, Shareholders did not raise excusable neglect in connection with an appeal within the time limits of Rule 8002(c).  We cannot find excusable neglect when that issue is raised for the first time after the expiration of Rule 8002's 30 day period.  The December 27 appeal was untimely, and as a consequence we lack jurisdiction over it.

1.

We reach a different conclusion regarding Shareholder's second attempt at appeal.  The Notice filed on January 27, 1994, appealed the bankruptcy court's January 19 order.  It was therefore filed at the eight-day mark, within Rule 8002(a)'s requirements.  Although counsel styled it an "Amended Notice of Appeal," this title description is not determinative.  It is clear from the language of the notice that Shareholders were appealing the January 19 Order.  We hold, therefore, that the appeal of the January 19 Order was timely.

2.

We now turn to Sheridan's appeal.  While Shareholders attempted to secure appellate review through traditional methods, Sheridan blazed its own procedural trail.  On May 23, 1994, Sheridan filed the "Motion for Order Determining the Final Allowed Compensation to Managing Agent, Attorney for Managing Agent, and Disbursing Agent . . .."  It then appealed the denial of that order.

Sheridan cited no rule, statute, precedent, or other authority supporting the use of such a motion as a vehicle to challenge the perviously awarded fees.  The motion seems to have appeared out of nowhere with no warning that it was coming and no procedural basis upon which to justify its appearance.  Sheridan's brief on appeal adds nothing to explain the basis for the motion.  Sheridan's motion appears to be little more than an

attempt to circumvent established procedures of appellate review.

Aside from certified interlocutory appeals, an issue not raised by this case, the appellate jurisdiction of the district court and the court of appeals in bankruptcy matters is limited by statute to final decisions, judgments, orders, and decrees of the bankruptcy courts.  See 28 U.S.C. § 158(a) (district court); 28 U.S.C. § 158(d) (court of appeals).  Appeals from final orders are governed by the time periods of Rule 8002.

Our examination of Sheridan's appeal convinces us that it is improper.  On the one hand, if Sheridan's motion sought an independent determination on fees from the bankruptcy court, the denial of that motion was not a final order appealable under 28 U.S.C. § 158.  On the other hand, if Sheridan's motion sought to challenge earlier orders purporting to be final orders awarding fees, then the motion was untimely.  In either case, the district court had no jurisdiction to hear the appeal.

Rather than responding to these problems directly, however, Sheridan makes two arguments in favor of its novel procedure.  First, it claims that the filing of eleven fee applications by one individual wearing three different hats prevented any challenge until all fees had been awarded.  Only then could Sheridan review the applications, compare them, and ensure that LaPenna had not double-billed for the same services on multiple applications.  The district court found this argument persuasive.  We disagree with the district court's conclusion,

however, because LaPenna had received "final" awards for all his services more than ten days prior to the filing of Sheridan's motion.

Although we are sympathetic to Sheridan's difficulties--the fee applications and allowances in this case will never be cited as  models of clarity--we cannot endorse the route that Sheridan took.  Sheridan's proper course was to file a notice of appeal from any order, denominated a final order, to which Sheridan had objections.  Final usually does mean final.  A party foregoes such an appeal at its peril.  Far from preventing a challenge, the entry of an order, entitled "final," which grants a confusing fee application, should have suggested the filing of an appeal.

This brings us to Sheridan's second argument.  Sheridan claims that none of the orders entered in this case were final orders; hence, its method of appeal was not barred.  Sheridan's belief, however, that the bankruptcy court's orders were not final does not justify its resort to a novel motion.  Certain of the orders were labeled final, and Sheridan should have challenged those orders as they appeared.  Sheridan's subjective belief in the finality of the orders has no bearing on the jurisdictional determination.

In reaching these conclusions, we have considered the practical problems that Sheridan faced.  We believe that Sheridan could have addressed these problems by objections to interim

allowances and by an appeal of the final award.  Sheridan could easily have addressed its concerns about over-billing and double-billing by objecting to the fee applications that it found problematic.  If the bankruptcy court rejected its arguments, Sheridan could have filed a timely appeal to the district court and ultimately to us.  Sheridan cannot obtain review at its leisure by crafting a novel pleading that lacks any basis in law.

## B.  The Scope of the Appeal

Having concluded that Shareholders did file a timely appeal of the January 19 Order, we now turn to the question of the scope of that appeal.  As we discuss above, LaPenna acted in three different capacities during the Sound Radio reorganization:  Managing Agent, Attorney to the Managing Agent, and Disbursing Agent.  At the time that the fee applications were filed, none of the shareholders asked for an overall review of LaPenna's performance of those functions or of the fee awards for them. Nor did the bankruptcy court perform such a review sua sponte. In January 1993, when the last of the awards was made, we had not specifically ruled on the question of whether such an independent review by the bankruptcy court was necessary, or even permissible.  In March 1994, however, we issued our opinion in In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994).  In Busy Beaver, we not only clarified the authority of the bankruptcy court to review fee requests sua sponte, we went further and held that
the bankruptcy court has a duty to review fee applications,

> notwithstanding the absence of objections by the . . . creditors, or any other interested party, a duty which the Code does not expressly lay out but which we believe derives from the court's inherent obligation to monitor the debtor's estate and to serve the public interest.

19 F.3d at 841. In light of such a duty to review, it would have been appropriate for the bankruptcy court on its own initiative to have examined the fee awards, including whether LaPenna, in fulfilling three different functions in the Sound Radio reorganization, correctly allocated his different tasks to the proper function and whether the fee for each function, as well as the total fees awarded, accurately reflected LaPenna's various responsibilities.[7] Moreover, in light of our determination, since Busy Beaver, that Shareholder's appeal of the last of the orders awarding compensation to LaPenna was a valid appeal, we find that it is proper now to direct the bankruptcy court to perform a Busy Beaver review of all the interim allowances La Penna received in order that the court may evaluate LaPenna's overall performance of his three functions. In addition, because of the interrelationship of the roles LaPenna performed, we conclude that a Busy Beaver review of his fees must consider his overall performance, its contribution to the resolution in the case, and the correct attribution of each role to the fee awarded for it.

---

Although we decided Busy Beaver after January 19, 1993, the basis for the duty we described in Busy Beaver was extant in 1993. As we discussed in Busy Beaver, Bankruptcy Rule 2017(b), 11 U.S.C. § 330(a), and 11 U.S.C. § 105(a) provide "clear and compelling authority for the bankruptcy court's sua sponte review of fee or expense applications." 19 F.3d at 841.

In coming to a conclusion that a review is needed, we note that the record before us reveals at least four orders that purport to be final fee awards.  Two of these orders, dated July 1 and July 29, 1992, claim to award LaPenna final fees in his role as Managing Agent.  Although the July 1 order is designated "Final' in its title, a handwritten addition delays completion of the payment to the Managing Agent until he has submitted his final report.  As Sheridan has complained in its fee motion, as of May 20, 1994, a final accounting had not been submitted by LaPenna.  In regard to the July 29 order, LaPenna argues on appeal that it is actually a final order awarding him final fees as Attorney for the Managing Agent.  If so, then it conflicts with the December 14, 1993, order that purports to accomplish the same thing.  The finality of the December 14 order is itself undermined because the word "final" is written in by hand above the title.  We thus might have two final orders for LaPenna as Managing Agent and two final orders as Attorney for the Managing Agent.  We might also have no final orders for LaPenna in either capacity.  In addition, as a practical matter, many of the allegedly final orders do not appear to be truly final.  For example, following the July 29, 1992, "final" order, which LaPenna now claims granted him final fees as Attorney for the Managing Agent, he continued to perform services and received four additional fee awards in that role.  We have difficulty viewing an order as final when the subject of that order remains

an active participant in a still very active case.

Fortunately, we have only one final order for LaPenna as Disbursing Agent. This January 19, 1993, order for the Disbursing Agent fee is also the last of the awards made by the bankruptcy court, and apparently the last one it intended to make. For that reason, under the facts of this unusual case, we have determined it to be the "final" order which permits an appeal of the overall compensation allowed to LaPenna in his triple capacities.

For the above reasons, we find the bankruptcy court's approach to the so-called final orders inconsistent with the procedures it should have followed prior to entering a truly final order. A given fee application must be examined not only on its own terms but also in light of prior awards. See 11 U.S.C. § 330(a)(5) ("[t]he court shall reduce the amount of compensation awarded . . . by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate"); see also In re Leedy Mortgage Co., 126 B.R. 907 (Bankr. E.D. Pa. 1991) (examining total fee at conclusion of case; revisiting interim awards); cf. In re Public Service Co., 138 B.R. 660 (Bankr. D.N.H. 1992) (explaining that interim fees are an allowance to be credited as part of final fee award for entire case). Moreover, when a professional agent or attorney is

performing multiple functions, it may be advisable to examine each of the fees awarded to such an applicant to ensure that they are properly attributed to the appropriate function. Before awarding a final fee, the bankruptcy court should evaluate the services performed by the professional in toto to make an overall determination of the awards which are merited by the entire course of services. No such calculation took place in this case.

An additional concern that we have with the total amount of the fee awards arises from the fact that LaPenna was in effect a trustee, albeit he was titled Managing Agent. LaPenna appears to concede that his fees as Managing Agent should be computed according to the provisions of 11 U.S.C. § 326 which sets limitations on the compensation of trustees. His November 19, 1991, and the May 27, 1992, applications for compensation for the Managing Agent were based on the trustee's commissions set forth in § 326(a). There is disagreement among the parties, however, as to whether the $8,100,000 basis upon which these commissions were computed was the appropriate figure. This element of the basis for the Managing Agent fee would also be appropriate to consider in a review of the fees.

Because of these problems, we have doubts regarding LaPenna's overall fee award. The district court shared our concern, and it took steps to review and reduce the fee. While we agree with the district court's assessment of the case, we cannot agree with the procedure it followed. The district court

reviews the proceedings of the bankruptcy court in an appellate capacity. A <u>Busy Beaver</u> fee examination, which may entail the taking of evidence, including testimony and fact-finding by the court, is inappropriate for an appellate tribunal. Nor can such a fee dispute be resolved on the briefs. Once the district court found the bankruptcy court's treatment of the fee issue inadequate, its proper course was to remand the case to the bankruptcy court with instructions to perform a <u>Busy Beaver</u> evaluation. Because the district court relied on supplemental briefing to reach an independent determination on the reasonableness of LaPenna's fees, we will vacate its judgment.

## I. CONCLUSION

We will remand this case to the district court with instructions to remand it to the bankruptcy court to undertake a <u>Busy Beaver</u> evaluation of the propriety of LaPenna's total fee award. In making this calculation, the bankruptcy court must consider all fees awarded to LaPenna in each of his three capacities. The bankruptcy court should then enter a final award that delineates LaPenna's appropriate compensation in his various capacities based on his performance throughout the case.