

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-1999

# Robeson Ind Corp v. Hartford Accident

Precedential or Non-Precedential:

Docket 98-5168

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Robeson Ind Corp v. Hartford Accident" (1999). *1999 Decisions.* Paper 121.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/121

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 13, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5168

ROBESON INDUSTRIES CORP.,
        Appellant,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY;
ZURICH INSURANCE COMPANY; CONTINENTAL
INSURANCE COMPANY

No. 98-5285

IN RE: ROBESON INDUSTRIES CORP.,
        Debtor,

ROBESON INDUSTRIES CORP.

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY;
ZURICH INSURANCE COMPANY; CONTINENTAL
INSURANCE COMPANY

On Appeal from the United States District Court
for the District of New Jersey
District Judge: Honorable Garrett E. Brown
(Civ. Nos. 97-5185, 98-1500)

Argued February 17, 1999

BEFORE: GREENBERG, ROTH, and
LOURIE,* Circuit Judges
_____

*Honorable Alan D. Lourie, Circuit Judge of the United States Court of
Appeals for the Federal Circuit, sitting by designation.

(Filed: May 13, 1999)

Eugene R. Anderson (argued)
Michael R. Magaril
Steven J. Pudell
Anderson Kill & Olick, P.C.
One Gateway Center, Suite 901
Newark, NJ 07102

 Attorneys for Appellants

Lon A. Berk (argued)
Sandra Tvarian
Wiley Rein & Fielding
1776 K Street, NW
Washington, DC 20006

Gerald A. Hughes
Hughes & Hendrix
850 Bear Tavern Road, Suite 304
West Trenton, NJ 08628

 Attorneys for Appellee
 Zurich Insurance Company

James W. Greene (argued)
Thompson, O'Donnell, Markham,
Norton & Hannon
805 15th Street, NW, Suite 705
Washington, DC 20005

Paul J. Russoniello
Flaster, Greenberg, Wallenstein,
Roderick, Spirgel, Zuckerman,
Skinner & Kirchner
1810 Chapel Avenue West
Third Floor
Cherry Hill, NJ 08102

 Attorneys for Appellees
 Continental Casualty Company and
 American Casualty Company of
 Reading

2

OPINION OF THE COURT

LOURIE, Circuit Judge.

Robeson Industries Corp. appeals from the decision of
the United States District Court for the District of New
Jersey affirming the bankruptcy court's grant of summary
judgment that Robeson was not entitled to coverage under
its insurance policies and could not prevail in its tort
claims against the insurers. Robeson also appeals from the
decision of the district court denying jurisdiction to review
the bankruptcy court's imposition of sanctions under
Bankruptcy Rule 9011. See Robeson Indus. Corp. v. Zurich
Ins. Co., Civ. No. 97-5158(GEB) (D.N.J. Feb. 20, 1998)
(summary judgment); (D.N.J. June 2, 1998) (sanctions). We
affirm.

BACKGROUND

This appeal arises out of an adversary proceeding
commenced by debtor Robeson in the United States
Bankruptcy Court for the District of New Jersey. In that
proceeding, Robeson contended that Hartford Accident and
Indemnity Co., Zurich Insurance Co., and Continental
Insurance Co. (the "Insurers") had a duty to defend and
indemnify it against claims arising from the discharge of
certain contaminants at its manufacturing facility in
Castile, New York, including a claim brought by the New
York State Department of Environmental Conservation in
1990.[1] Robeson had purchased various commercial general
liability insurance policies from the Insurers that provided
coverage from 1976 to 1983. The policies were negotiated in
New York and were issued to Robeson at its headquarters
in Mineola, New York. Although the policies were
apparently not identical as to the property covered, see
Robeson Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93-

_____

1. In addition, a private claim was later filed after the commencement of
the bankruptcy proceeding by an adjacent landowner. See Robeson
Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93-33265(KCF), at 3 (Bankr.
D.N.J. Jan. 24, 1997) (memorandum opinion).

33265(KCF), at 4 (Bankr. D.N.J. Jan. 24, 1997) (memorandum opinion), they all pertained generally to Robeson's New York property, including the Castile facility. None of the policies contained a choice-of-law provision.

The policies contained two provisions relevant to the present controversy. The first provision obligated Robeson to give prompt notice to the Insurers of any occurrence or third-party claim covered by the policies (the "late notice" provision).2 The parties do not dispute that the states of New York and New Jersey differ in their interpretation of the "late notice" provision. Under New York law, an insured's breach of the timely notice provision relieves the insurer of its duty to defend or indemnify, even absent a showing of prejudice to the insured. See Unigard Sec. Ins. Co. v. North River Ins. Co., 594 N.E.2d 571, 573 (N.Y. 1992). In contrast, under New Jersey law, an insurer mustfirst establish prejudice before untimely notice relieves the insurer of its duties under the policy. See Cooper v. Government Employees Ins. Co., 237 A.2d 870, 874 (N.J. 1968).

The second policy provision generally excludes coverage for environmental contamination, except for contamination that was "sudden and accidental" (the "pollution exclusion" exception). Although Robeson argued to the bankruptcy court that no conflict of law existed between New York and New Jersey on the interpretation of the "pollution exclusion" exception, the court disagreed, noting that New

_____

2. What we refer to as the "late notice" provision is actually two separate
provisions in the policies that cover different circumstances, both of which were implicated in this case. The first provision states: "If a claim
is made or suit is brought against insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." See Robeson Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93-33265(KCF), at 3 (Bankr. D.N.J. Aug. 27, 1997) (memorandum opinion) (emphasis added). The second provision states: "In the event of an occurrence, written notice containing
particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of available witnesses, shall be given by or for the insured to the company, or any of its authorized agents as soon as practicable." Id. (emphasis added).

4

Jersey interprets the "sudden and accidental" language to cover gradual discharges, see Morton Int'l, Inc. v. General Accident Ins. Co., 629 A.2d 831, 870–75 (N.J. 1993), whereas New York interprets this language as covering only abrupt discharges, see Powers Chemco, Inc. v. Federal Ins. Co., 548 N.E.2d 1301, 1302 (N.Y. 1989). See also Pfizer, Inc. v. Employers Ins. of Wausau, 712 A.2d 634, 640–41, 643–44 (N.J. 1998) (summarizing the differences between New York's and New Jersey's interpretations of the"late notice" provision and the "pollution exclusion" exception).

The interpretations to be given to the "late notice" provision and the "pollution exclusion" exception are outcome-determinative in this case. Robeson did not timely notify the Insurers of their potential liability under the policies until December 1992, two-and-a-half years after the State of New York filed its claim against Robeson and several years after the contamination began. Moreover, Robeson's contamination was gradual, ostensibly occurring over several years. Robeson thus contended in the Bankruptcy court that New Jersey law applied to the interpretation of the policies. Robeson's main argument in support of its contention was that it had moved its headquarters to South Plainfield, New Jersey in April 1991.3 Robeson further argued, in an attempt to show its close ties to New Jersey, that it had been using warehousing facilities in New Jersey for approximately the last twenty years, paid New Jersey taxes thereon, and had continually maintained management personnel and sales representatives in New Jersey.

The bankruptcy court, applying New Jersey choice-of-law rules, found Robeson's argument in favor of the application of New Jersey law unpersuasive, and held on summary judgment that New York law applied to the interpretation of the policy exclusions. See Robeson Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93–33265(KCF), at 17 (Bankr. D.N.J. Jan. 24, 1997). The court later granted summary judgment of non-coverage to the Insurers. See id. at 2–8 (Bankr.

_____

3. At some time prior to its filing of the instant suit, Robeson moved its headquarters again from New Jersey to California. See Robeson's Brief, at 8 n.9.

5

D.N.J. Aug. 27, 1997). The court also clarified that its choice-of-law ruling also applied to Robeson's tort claims against the Insurers--claims stemming largely from the Insurers' alleged bad faith with respect to the denial of coverage. Finding such claims to be unsustainable under New York law, the court granted summary judgment to the Insurers on the tort claims as well. See id. at 8-12. The district court summarily affirmed the bankruptcy court's summary judgment rulings on appeal. See Robeson Indus. Corp. v. Zurich Ins. Co., Civ. No. 97-5158(GEB) (D.N.J. Feb. 20, 1998).

In its summary judgment opinion, the bankruptcy court invited the Insurers to move for sanctions under Bankruptcy Rule 90114 because of Robeson's dogged insistence that New Jersey law or policy should apply even in the face of the court's earlier choice-of-law ruling and New York law directly on point. The Insurers accepted this invitation, and, not surprisingly, the bankruptcy court granted the resulting motion,5 awarding the Insurers their

_____

4. Bankruptcy Rule 9011 is similar to Rule 11 of the Federal Rules of Civil Procedure. It states in relevant part:

> (b) Representations to the court--By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances--(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)

> the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Subsection (c) provides for the imposition of sanctions for the breach of a party's Rule 9011 obligations.

5. The bankruptcy court stated: "This court determined on January 27, 1997 that under New Jersey choice of law rules . . . New York law applied. From January 27, 1997 to August 27, 1997, the plaintiff in an overly zealous manner created expense to the defendants on related issues without presenting [a] consistent theory or a good faith argument for reversing existing [law]. [Robeson's] briefs were duplicative, circulative, voluminous, self-righteous and full of[citations to] self-serving publication[s] which it authored." See Robeson Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93-33256(KCF), at 2 (Bankr. D.N.J. Feb. 11, 1998) (memorandum opinion).

litigation expenses for the time period between the court's choice-of-law ruling and its grant of summary judgment.

Robeson appealed the imposition of sanctions to the district court, but the court dismissed the appeal on the ground that it had not been filed within the ten-day time limit prescribed by Bankruptcy Rule 8002(a). The district court noted that the bankruptcy court signed its sanctions order on February 11, 1998, that the order was entered on the clerk's docket on February 23, 1998, and that the ten-day period began to run on this latter date. Because Robeson's notice of appeal was filed on March 6, the district court continued, it was one day late and therefore the court lacked jurisdiction. See Robeson Indus. Corp. v. Zurich Ins. Co., Civ. No. 97-5158(GEB) (D.N.J. Jun. 1, 1998) (hearing transcript). Ruling in the alternative, the district court affirmed the decision of the bankruptcy court to impose sanctions on the merits. See id.

Robeson appealed the summary judgment rulings and the sanctions order to this court. We have jurisdiction pursuant to 28 U.S.C. S 1291 (1994).

DISCUSSION

A. Standards of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). This court reviews a district court's grant of summary judgment de novo, reapplying the summary judgment standard. See General Ceramics, Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647, 651 (3rd Cir. 1995). Choice-of-law is a question of law which this court reviews de novo . See id. Whether an appeal from the bankruptcy court to the district court is timely is also a question of law which this court reviews de novo. See Shareholders v. Sound Radio, Inc., 109 F.3d 873, 879 (3rd. Cir. 1997). Because we sit in diversity in the present case, we are bound to follow the substantive law of the forum, see Clark v. Modern Group, Ltd., 9 F.3d 321, 326 (3rd Cir. 1994), including the forum's choice-of-law rules, see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

7

B. Choice-of-Law

The Supreme Court of New Jersey has in several cases
set forth New Jersey's choice-of-law rules for the
interpretation of casualty insurance contracts. See, e.g.,
Pfizer, Inc. v. Employers Ins. of Wausau, 712 A.2d 634 (N.J.
1998); HM Holdings, Inc. v. Aetna Cas. & Sur. Co., 712 A.2d
645 (N.J. 1998) (decided concurrently with Pfizer); Unisys
Corp. v. Insurance Co. of N. Am., 712 A.2d 649 (N.J. 1998)
(decided concurrently with Pfizer); The Gilbert Spruance Co.
v. Pennsylvania Mfrs.' Ass'n Ins. Co., 629 A.2d 885 (N.J.
1993). See also General Ceramics, supra. These cases make
clear that New Jersey follows S 193 of the Restatement
(Second) of Conflict of Laws.6 Pfizer, "applying the
principles" laid down in the Court's earlier opinion in
Spruance, sets forth the operative portions of that
provision:

> Spruance set forth a specific choice-of-law framework
> for interpreting casualty-insurance contracts. Under
> this framework, a court looks first to Restatement
> section 193, which provides that the place that"the
> parties understood . . . to be the principal location of
> the insured risk governs unless some other state has a
> more significant relationship under the principles
> stated in S 6 to the transaction and the parties."

Pfizer, 712 A.2d at 638 (citation deleted). Thus, under S 193
of the Restatement, New Jersey generally interprets
casualty-insurance policies in accordance with the law of
the state in which the insured risk is principally located,
unless some other state has a more significant relationship
to the transaction and the parties as illuminated by the

_____

6. The validity of a contract of fire, surety or casualty insurance and
     the rights created thereby are determined by the local law of the
     state which the parties understood was to be the principal location
     of the insured risk during the term of the policy, unless with
respect
     to the particular issue, some other state has a more significant
     relationship under the principles stated in S 6 to the transaction
and
     the parties, in which event the local law of the other state will
be
     applied.

Restatement (Second) of Conflicts of Law S 193 (1969).

consideration of factors listed in S 6.7 The Court has
referred to the approach under S 193 as "site-specific." See
Pfizer, 712 A.2d at 637.

However, not every application of S 193 necessitates
review of the S 6 factors. Indeed, rote application of the S 6
factors would swallow the "site-specific" rule that S 193
prescribes. The Supreme Court of New Jersey has
recognized as much:

> When the policy covers risks located primarily in a
> single state, the choice-of-law issue can be
> straightforward. For example, there is no choice-of-law
> issue where the policyholder is located in one state, the
> environmental liability arises out of the same state,
> and the policies are issued by a state-based insurer for
> that one site. An easy example is that of a [commercial
> general liability] policy covering a solid waste treatment
> plant creating a risk in a single state. At the other end
> of the spectrum are cases where a single insured seeks
> coverage under [commercial general liability] policies
> for certain environmental and toxic tort liabilities,
> including . . . [multiple] sites located in . . . different
> states. When such an insured operation or activity is
> predictably multistate, the significance of the principal
> location of the insured risk diminishes; in such a case,
> section 193 directs that the governing law is that of the

_____

7. [T]he factors relevant to the choice of the applicable rule of law
    include (a) the needs of the interstate and international system,
(b)
    the relevant policies of the forum, (c) the relevant policies of
other
    affected states and the relevant interests of those states in the
    determination of the particular issue, (d) the protection of
justified
    expectations, (e) the basic policies underlying the particular
field of
    law, (f) certainty, predictability, and uniformity of result, and
(g) ease
    in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws S 6 (1969).

The Supreme Court of New Jersey, following Ceramics, collapsed these
factors into four "categories" for purposes of application: (1) the
competing interests of the relevant states, (2) the national interests of
commerce among several states, (3) the interests of the parties in
realizing justified expectations and achieving predictable results, and
(4)
the interests of judicial administration. See Pfizer, 712 A.2d at 639-40.

> state with the dominant significant relationship according to the principles set forth in Restatement section 6 as applied to the particular issue involved.

Pfizer, 712 A.2d at 638 (citations and quotations omitted). Therefore, a court need only consider the application of the S 6 factors when the "insured operation or activity is predictably multistate," that is, when the policy covers sites in many states, or when the insured risk is transient. See id. at 639 (noting that the insured risk was "to some degree transient," and therefore "to choose the applicable law that governs the disputed issues, Spruance requires that we turn to the S 6 analysis."). The comments to S 193 confirm this interpretation:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the terms of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states.

Restatement (Second) of Conflict of Laws S 193 cmt. b (1969).

Robeson's principal argument is that HM Holdings , a case decided concurrently with Pfizer, mandates that New Jersey law applies in this case, at least with respect to the interpretation of the "late notice" provision. Robeson asserts that that case is "remarkably similar" to the facts presented here. We disagree. Like Pfizer, Unisys, Spruance, and General Ceramics, HM Holdings involved a "predictably multistate" insured operation, which consequently necessitated a S 6 inquiry on its particular facts. Specifically, HM Holdings involved coverage under a commercial general liability policy of nine waste sites located within seven different states. See HM Holdings, 712 A.2d at 211–12. The Court concluded under S 6 that the law of the waste sites would apply to the interpretation of the "pollution exclusion" exception, and that either the law of

10

New Jersey or the law of the waste sites applied to the "late notice" provision, with New Jersey law taking precedence if the law of the waste sites was similar to New York's, the state in which the parties were headquartered. See id. at 648-49.

In contrast, Robeson's insured activities were not "predictably multistate," and they thus fit within the general site-specific rule of S 193. The policies involved covered only Robeson's New York property, and only New York was implicated by Robeson's contamination. Compare Spruance, 629 A.2d at 885 (involving the hauling of waste from Pennsylvania to New Jersey). These facts alone are dispositive under S 193 because the parties at the time of contracting clearly understood New York (more specifically, Robeson's plant in Castile) to be the principal location of the insured risk. In fact, the facts of this case, viz., "a commercial general liability policy covering a . . . plant creating a risk in a single state," were described by the Supreme Court of New Jersey as an "easy example" that presents "no choice-of-law issue" and no need for a complex balancing of factors under S 6. See Pfizer, 712 A.2d at 638; cf. Spruance, 629 A.2d at 891 ("When the waste producing facility and the waste site are located in the same state, their common location makes the application of section 193 straightforward.").8

Robeson's argument concerning the movement of its headquarters to New Jersey does not alter the result to which S 193 directs us. First, the site-specific rule prescribed by that section is unaffected by the location of the contracting parties' headquarters; the focus is the

_____

8. The bankruptcy court was also aware that "[t]he instant case represents the hypothetical `straightforward' case suggested by the court in [Spruance] because the insured risk was not transient and was not scattered through several states." See Robeson Indus. Corp. v. Zurich Ins. Co., Bankr. No. 93-33265(KCF), at 10 (Bankr. D.N.J. Jan. 24, 1997) (memorandum opinion). Despite the bankruptcy court's recognition of this fact, and its proper conclusion based thereon that New York law should apply to the interpretation of the policies, the court went on to balance the various states' interests under S 6. While we consider this extra step unnecessary under S 193, we believe that it helped to underscore the bankruptcy court's conclusion.

11

parties' understanding of the location of the insured risk.9
Second, S 193 prescribes that it is the parties'
understanding of the principal location of the insured risk
"during the term of the policy" that matters. Thus, the
movement of Robeson's headquarters to New Jersey seven
years after the expiration of the last of the policies at issue
cannot have affected the parties' understanding at the time
of contracting that New York was the principal location of
the insured risk. Robeson's other contacts with New Jersey
likewise do not affect the analysis under S 193.

We conclude that the district court correctly affirmed the
bankruptcy court's application of New Jersey choice-of-law
rules and correctly affirmed the application of New York law
to the interpretation of the policies. Because Robeson does
not dispute that it is not entitled to coverage under the
laws of New York, the district court's affirmance of the
bankruptcy court's grant of summary judgment to the
Insurers is also affirmed.

C. The Tort Claims

Robeson argues that the bankruptcy court improperly
applied New York law to its tort claims. Robeson asserts
that its tort claims are independent of its claim for coverage
under the policy, and that New Jersey choice-of-law rules
mandate that New Jersey law should apply to those claims.
Robeson supports this assertion by noting that its various
tort claims,10 which it summarizes generally as the

_____

9. We do not mean to suggest that the location of a party's headquarters
is irrelevant in a "multistate activity" case--i.e., when a weighing of
the
S 6 factors is warranted under S 193, see, e.g., Pfizer, 712 A.2d at 641
(assessing the relevance of New York law in a multistate site case
because New York was the principal place of business of the insured and
was the location in which the contracts were negotiated), but this is not
such a case.

10. The relevant tort claims are styled in Robeson's complaint as "breach
of covenant of good faith and fair dealing,""failure to warn," and "breach
of fiduciary duty." See Robeson's Complaint at 15, 17, 22. Review of
these claims reveals, as Robeson admits, that the claims are premised
upon the Insurers' alleged bad faith in the handling of Robeson's claims.
Thus, we will refer to Robeson's various tort claims as a single claim for
bad faith.

12

Insurers' "bad-faith claims handling and investigation of Robeson's claims in connection with the Castile facility," Robeson's Opening Brief at 18, all took place after Robeson had moved its headquarters to New Jersey and therefore that the state of New York has no relevant interest in the controversy. Robeson argues further that New Jersey law allows for the imposition of tort liability against an insurer for bad faith even when the insured was not entitled to coverage under the policy, and cites several cases from various state supreme courts in support of this contention. The Insurers respond that the same state's law--New York's --should apply to both Robeson's coverage and bad faith claims because the bad faith claims merely arise out of alleged unsatisfactory performance by the Insurers under the policy. Accordingly, the Insurers contend that New York law applies to the propriety of the bad faith claims, and that such claims are unsustainable thereunder.

We do not necessarily agree with the bankruptcy court's conclusion that the same state's law necessarily applies to the coverage and bad faith claims. The appellate courts of New Jersey have explained that

> conflict of laws principles do not require that all legal issues presented by a single case be decided under the law of a single state. Instead the choice of law decisions can and should be made on an issue-by-issue basis, and thus the law of different states can apply to different issues in the same case.

O'Connor v. Busch Gardens, 605 A.2d 773, 774 (N.J. Super. Ct. App. Div. 1992) (citing Johnson Matthey, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., 593 A.2d 367, 375 (N.J. Super. Ct. App. Div. 1991)). Therefore, a separate analysis to determine which state's law applies to Robeson's bad faith claim would normally be appropriate.

However, application of New Jersey's conflict-of-law rules is unnecessary here because neither New Jersey nor New York would sustain Robeson's tort claims. In New York University v. Continental Insurance Co., 662 N.E.2d 763 (N.Y. 1995), the Court of Appeals of New York dismissed a claim analogous to Robeson's, namely, that the insurer had negligently and recklessly failed to adequately investigate

13

the insured's claim and denied payment. See New York Univ., 662 N.E.2d at 769-70. The Court of Appeals began its analysis by noting that insurance policies, like other contracts, contain an implied duty of good faith and fair dealing. See id. at 769. In order to sustain an action for tort liability against an insurer, as opposed to an action for breach of contract, the insured's complaint must assert a basis for tort liability that goes beyond the breach of the insurer's contractual duties. See id. at 770 (noting that the insured's complaint must state a "tort independent of the contract"). The Court of Appeals concluded that

> Plaintiff's claim amounts to nothing more than a claim based on the alleged breach of the implied covenant of good faith and fair dealing, and the use of familiar tort language does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages.
>
> The cause of action is duplicative of the . . . cause of action for breach of contract and should have been dismissed.

Id. (citations omitted). Because Robeson's tort claims in essence allege no more than that the Insurers engaged in bad faith in their performance of their duties under the policy, New York law mandates their dismissal.

Robeson's bad faith claim does not fare any better under New Jersey law. In Pickett v. Lloyd's, 621 A.2d 445 (N.J. 1993), the New Jersey Supreme Court concluded that "there is a sufficient basis in law to find that an insurance company owes a duty of good faith to its insured in processing a first-party11 claim," a conclusion which rested largely on the understanding that contracts generally contain an implied duty of good faith and fair dealing. See Pickett, 621 A.2d at 540. After extensive analysis of the authorities, the Court concluded that the cause of action for bad faith is "best understood as one that sounds in

_____

11. Both New York University and Pickett involve first-party claims. However, we see no reason why the rationales of these cases should not likewise apply in the third-party context, i.e., when the policy covers damage to a third party's property.

14

contract," id. at 452, and that contract damages were the appropriate remedy for breach, see id. at 454. The Court continued that whether bad faith exists depends on whether the insured's claim was "fairly debatable." Id. at 453. In other words, the insured must "show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." Id. In defining the scope of what claims are "fairly debatable," the Court noted the following:

> Perhaps the [fairly debatable] rule is easiest to understand in the context of the denial of benefits on the basis of non-coverage . . . . Under the "fairly debatable" standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.

Id. at 453-54 (citations omitted).

Here, Robeson did not establish a right to summary judgment that there was coverage. In fact, summary judgment was decided in favor of the Insurers , a ruling which we have affirmed as correct. Accordingly, the Insurers did not act in "bad faith" as a matter of New Jersey law.

Because the application of the laws of New York or New Jersey to Robeson's tort claims would lead to the same conclusion--i.e., dismissal--there is no need for us to embark upon a choice-of-law analysis with respect thereto. Instead, we agree with the bankruptcy court and the district court that these claims were not sustainable in either jurisdiction, and we affirm the grant of summary judgment in favor of the Insurers.

D. Sanctions

Robeson's final argument is that its appeal of the bankruptcy court's sanctions order to the district court was not untimely under Bankruptcy Rule 8002(a). In support of its argument, Robeson contends that the ten-day time period of Rule 8002(a) did not begin to run until the district

court had finally disposed of Robeson's earlier appeal on the merits of coverage and tort liability on February 24, 1998.12 As Robeson's appeal of the sanctions order was filed on March 6, 1998, within 10 days of February 24th, Robeson contends that its appeal was timely filed.

We disagree. Rule 8002(a) states that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." This court has noted that "[t]his deadline is strictly construed. The failure to file a timely notice of appeal creates a jurisdictional defect barring appellate review." Shareholders v. Sound Radio, Inc., 109 F.3d 873, 879 (3rd Cir. 1997) (citations omitted). The rule clearly defines the act that starts the running of the appeal period--viz., entry of the order in the bankruptcy court. The rule makes no exception for the circumstance that a party has taken an appeal to the district court on the merits of the case or on a separate issue presented in the same controversy. Furthermore, we perceive no reason that such an exception is warranted, and in any event it would not be consistent with the "strict construction" that we are required to afford to the rule. Accordingly, we agree with the district court that Robeson's appeal of the sanctions order was not timely and that the district court therefore lacked jurisdiction to review that order. Given our affirmance on jurisdictional grounds, we express no opinion on the district court's conclusion that the sanctions order was otherwise affirmable on its merits.

_____

12. Appellee Zurich appears to have misunderstood Robeson's argument, for it discusses the relevance of the fact that the district court had stayed its sanctions order pending resolution of Robeson's earlier appeal on the merits of coverage and tort liability. However, Robeson clearly articulates its argument in its opening brief: "The relevant issue before this Court is whether an appeal of sanction may proceed in the absence of a final adjudication of an action, not whether a court's entry of a stay of its own sanctions order tolls the time to file a notice of appeal from the Order." Robeson's Opening Brief, at 43 (emphasis in original). Given the clarity of Robeson's argument, there is no reason for us to consider the relevance of the district court's stay.

CONCLUSION

The district court did not err in (1) affirming the bankruptcy court's conclusion that New York law applied to the interpretation of the insurance policies at issue and that Robeson was not entitled to coverage thereunder, (2) affirming the bankruptcy court's conclusion that Robeson's tort claims were unsustainable, or (3) dismissing Robeson's appeal on the issue of sanctions for lack of jurisdiction. Accordingly, the judgment of the district court is

AFFIRMED.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17